## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EXELA PHARMA SCIENCES, LLC,

                    Plaintiff,

        v.                                                    C.A. No. 20-365-MN

ETON PHARMACEUTICALS, INC.,

                    Defendant.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## <u>DEFENDANT'S MOTION TO EXTEND THE SCHEDULING ORDER</u>

Gregory R. Booker (#4784)
Robert M. Oakes (#5217)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
Tel: (302) 652-5070
booker@fr.com
oakes@fr.com

**ATTORNEYS FOR PLAINTIFF**
**EXELA PHARMA SCIENCES, LLC**

Dated: July 15, 2021

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................... 2

II.    PROCEDURAL BACKGROUND.......................................................................... 3

    A.    Eton's Systematic Efforts to Impede Discovery and Delay the Case .................... 3

    B.    Exela's Diligent Efforts to Make Discovery Progress and Keep this Case on Track for Timely Resolution, Despite Eton's Refusal to Engage .................................................................................................................. 6

    C.    The Current *Markman* Schedule Is the Result of Eton's Delay Tactics and Was Proposed by Eton........................................................................ 8

III.    ARGUMENT ...................................................................................................... 10

    A.    Exela's Productions Provide No Reason to Extend the Schedule by Nearly Three Months .......................................................................................... 10

    B.    There Is No Problem with the Current Exert Report Schedule, and Eton's Claim Otherwise Lacks Credibility .......................................................... 11

IV.    CONCLUSION................................................................................................... 12

## I.    INTRODUCTION

Eton's motion is an unreasonable response to a problem that is largely of its own making. It seeks a *3-month* extension, including removing the March 2022 trial date from the calendar, for a *3-week* delay in document production.

Exela has offered reasonable accommodations to allow Eton additional time.  Exela proposed a schedule extending all discovery and expert report deadlines by four weeks, and also invited any counterproposal from Eton that maintains the current trial date.  Eton rejected both offers and instead filed this motion.  Eton was not looking for anything to ameliorate the prejudice it claims; it was only interested in vacating the March 2022 trial date.  That trial date is still seven months away.  There is no reason Eton cannot adequately prepare.

Nor does Eton's feigned concern about the expert report deadlines, as they relate to the *Markman* schedule, justify moving trial.  ***Eton proposed*** the current *Markman* schedule, and it did so with full knowledge that its proposed *Markman* hearing date was *after* the date for serving opening expert reports.  There is nothing unusual about that sequence of events, as experts frequently have to address competing constructions in their expert reports.  And here, where there are only two terms at issue, and both claim construction disputes are about indefiniteness rather than two competing constructions, the burden on the experts is even less.  Nothing about the *Markman* schedule warrants an extension at all, let alone one as long as Eton seeks.

Eton's requested extension is unwarranted and not driven by any supposed prejudice. Rather, it appears to be driven by a desire to clear the path for an at-risk launch of its generic product.  Eton recently announced in its SEC filings that the 30-month stay on FDA's approval of its ANDA "expires in August 2022, ***which may allow the company to launch the product at-risk prior to the conclusion of litigation***."  (Ex. A at 5 (emphasis added).)  In other words, Eton has signaled the possibility of an at-risk launch should there not be a final decision in this case by

the time the 30-month stay expires in August 2022.  This would unquestionably cause irreparable harm to Exela.  And, practically, it would necessitate preliminary injunction proceedings that would cause substantial additional work for the Court and the parties.  Eton certainly knows that releasing the current March 2022 trial date—at a time when this Court's docket is likely to be overwhelmed by the COVID-19 backlog—makes this scenario all the more likely.

The Court should reject Eton's latest delay tactic and, respectfully, deny Eton's motion. Exela has now completed its document production, depositions for both parties' witnesses are underway and scheduled to be completed on July 29, and the deadline for opening expert reports (August 13) is still a month away.  If the Court believes an extension is warranted, Exela proposes that the Court adopt the four-week extension that Exela proposed to Eton (*see infra* Section II.B), which is a more than reasonable accommodation that keeps the case on track for its March 2022 trial date in accordance with the objectives of the Hatch-Waxman statute.

## II.     PROCEDURAL BACKGROUND

Throughout this case, Exela has continuously sought to move discovery along and advance the case to allow for trial on the current schedule, but Eton has systematically delayed in virtually all aspects of the case.  Below is a summary, as relevant background to how we got to the present dispute.

### A.     Eton's Systematic Efforts to Impede Discovery and Delay the Case

In October 2020, Eton prematurely moved for a stay of the litigation pending resolution of its PGR petitions, a motion it was later forced to withdraw when the PTAB denied those petitions.  (*See* D.I. 32, D.I. 47, D.I. 48.)  Then in December, shortly after Exela began producing documents to Eton, including its NDA for ELCYS®, Exela approached Eton about search terms so the parties could begin searching and producing their electronically stored information ("ESI").  (Ex. B.)  From December 2020 to May 2021, Eton spent three months ignoring, and

then another three months rebuffing, Exela's repeated efforts to initiate e-discovery, ensuring

very little progress could be made.  For example:

- Eton did not respond to Exela's December letter for a month.  And when Eton finally did respond, it was only to say it was talking to its client and would come back with additional information.  (Ex. C.)

- After ten more days with no substantive response from Eton, Exela sent a letter on January 29 proposing a meet and confer to establish a procedure for exchange of search terms.  (Ex. D.)  Eton did not respond to that either.

- Exela sent another letter on February 17, again asking to meet and confer, and this time reminding Eton there were only two months remaining until the April 9 deadline for substantial completion of document production then in place.  (Ex. E.)  More radio silence from Eton.

- Exela emailed again about search terms on February 26 (Ex. F), and this time Eton responded, but only to promise a substantive response "early next week."  (Ex. G.) "Early next week" came and went.

- On March 3, Eton kicked the can down the road again, this time telling Exela: "[w]e think that electronic document collection should take place after the Court decides whether to allow Exela to amend its complaint with additional patents."  Eton provided no explanation for why it made sense to wait, and it made little sense to Exela since Eton was simultaneously arguing that the new patents claimed essentially the same invention as the others.  (Ex. H; D.I. 69 at 2.)

- Eton acknowledged that its inaction "may delay the April 9, 2021 deadline for substantial completion of document production."  (Ex. H.)  As if to suggest it was doing Exela a favor, Eton stated that it was "willing to consider an extension of the discovery schedule to accommodate this delay."  (*Id.*)  Eton's stonewalling, of course, is what necessitated an extension, by preventing either party from being able to comply with its ESI obligations.[1]

- Fed up with Eton's delay tactics, on March 17, Exela proposed its own list of search terms and stated that, if Eton did not provide any edits or additions within seven days, Exela was going forward with them.  (Ex. I.)  Consistent with its typical pattern, Eton did not respond.

---

[1] The parties filed a joint stipulation on March 30 to extend the substantial completion deadline to May 7.

4

- Exela proceeded to search and begin reviewing its ESI documents using its own terms. Exela produced its first batch of ESI documents on April 16, and continued to make rolling productions thereafter.

By this time, Eton had still done nothing with respect to searching its own documents, apparently choosing instead to focus its efforts on other avenues of delay.  In March, Eton notified Exela that it would oppose Exela's motion for leave to amend its complaint to add three newly-issued Exela patents.  Eton's opposition forced Exela to invoke the Court's discovery dispute process which, naturally, delayed the timing of Exela's amended complaint.  It was difficult to see Eton's opposition as anything but an attempt to delay, given that (a) Eton had known about the forthcoming patents since December (because Exela had notified Eton of the allowances and the issue notifications); (b) Exela's motion to amend came *months* before the deadline in the agreed-upon scheduling order for amending pleadings; and (c) Eton's purported basis for opposing was undue prejudice, yet Eton also argued to the Court that "the new patents add no new matter, but are claiming the same matter as the earlier patents."  (D.I. 69 at 2.)

The Court granted Exela's motion at the April 12 hearing.  But that did not deter Eton; two weeks later Eton filed a motion to dismiss the new patents.  (D.I. 78.)

Finally, on May 6, Eton proposed search terms for searching its own documents. (Ex. J; Ex. K.)  The parties filed a joint motion for a short extension of the substantial completion deadline, from May 19 to June 1, and Exela promptly provided its counters to Eton's search terms to avoid any further delay.  (D.I. 87; Ex. L.)

On May 10—only three weeks before the new deadline for substantial completion, and three months after Exela had commenced its ESI search and review process using its own terms—Eton requested that Exela run an additional search term on *Exela's* documents.  (Ex. M.) The term related to "Sandoz," which Eton had to know would hit on numerous privileged and

work product documents given that Exela had recently litigated against Sandoz in two lawsuits relating to cysteine injection products.  This would also, of course, add substantially to Exela's review time.  Exela noted that Eton's request for an additional term was untimely, but nonetheless agreed to run a modified term.  (Ex. N.)[2]

## B.    Exela's Diligent Efforts to Make Discovery Progress and Keep this Case on Track for Timely Resolution, Despite Eton's Refusal to Engage

In contrast to Eton, Exela has worked diligently to produce its documents and respond to Eton's discovery requests.  After its early production of its NDA, other NDA-related documents, and first round of ESI documents, Exela continued to make rolling productions of documents in a good faith effort to meet the substantial completion deadline in spite of Eton's refusals to engage.  Specifically, Exela produced 905 custodial and non-custodial documents on April 16; 4,208 custodial documents and emails on May 28 and an additional 1,132 custodial documents and emails on June 2.  Thus, Exela produced its NDA and all its custodial documents, but for the ones flagged as potentially privileged, within one day of the deadline for substantial completion. It also provided detailed infringement contentions and interrogatory responses, citing documents it had already produced, well before the substantial completion deadline.

In the several weeks after the substantial completion deadline, Exela continued to ensure that it was fully complying with its production obligations, producing certified copies of the new patents and assignments and additional non-custodial ESI documents.  After Eton complained

---

[2] It bears noting that Eton also delayed in producing its post-submission ANDA documents and FDA correspondence (Ex. O), delayed in providing its contentions (*id.*), and to this day still has not produced a single document assigned to any custodian.  (Ex. P.)  Every ESI document Eton has produced originated from a Sharepoint site, which Eton identified in its Initial Disclosures as its non-custodial source of documents. (Ex. Q.)  And while counsel for Eton maintains that all its custodians' emails and documents were searched and everything relevant and responsive has been produced, those representations simply do not add up.  Exela has been diligently working with Eton on these issues in an effort to avoid burdening the Court with a motion to compel.

about the late productions, Exela explained that the first production included certified copies of the '713, '795, and '089 patents and their assignment records, which had been delayed from the USPTO due to Covid-related issues, and the second consisted of documents that largely overlap with previously produced NDA documents but simply reside on a different server (which Exela had identified in its disclosures as a non-custodial data source, so diligently produced from for completion). (Ex. Q.) Exela also pointed out that the delay was at least partially attributable to Eton's late addition of a search term only three weeks before the deadline for substantial completion, which added substantial review time to Exela's e-discovery efforts that were already underway. (*Id.*)

Eton was not interested in the explanations, though, and continued to complain that the documents were produced after the June 1 substantial completion date. Although the documents were produced less than a month after that date, Eton requested a three-month extension of the schedule, including rescheduling the trial date, with no reason given for such a lengthy extension proposal. Exela tried to compromise by proposing an extension of four weeks for the remaining fact and expert discovery deadlines, as set forth below:

| Current Date | Proposed Amended Date | Event |
|---|---|---|
| 7/30/2021 | 8/27 | L/D for Depositions of Fact Witnesses |
| 8/13/2021 | 9/10 | L/D for Parties to Serve Opening Expert Reports |
| 9/10/2021 | 10/8 | L/D for Parties to Serve Rebuttal Expert Reports |
| 10/8/2021 | 11/5 | L/D for Parties to Serve Reply Expert Reports |
| 11/5/2021 | 12/3 | Expert Discovery Cutoff |
| 11/19/2021 | 12/10 | L/D for Parties to File Opening Briefs for *Daubert* Motions |
| 12/7/2021 | 12/17 | L/D to Disclose Expert Testimony |
| 12/10/2021 | 1/3 | L/D for Parties to File Answering Briefs for *Daubert* Motions |
| 12/23/2021 | 1/17 | L/D for Parties to File Reply Briefs for *Daubert* Motions |
| 3/7/2022-3/11/2022 | Same | Trial |

(Ex. R.)

Exela also informed Eton during the meet and confer that it would consider an extension of up to six weeks, so long as the parties kept the trial date and kept the case on track to resolution before expiration of the 30-month stay.  But Eton rejected that offer too, and instead filed this motion, seeking the same thing that it has been seeking from the very start of the case—unreasonable and unjustified delay, and a later trial date.

After making two additional productions on July 2 and July 13, first to address Eton's untimely search term then to produce final documents after its privilege review, Exela has now completed its document production, and the parties are in the process of taking fact depositions of each other's witnesses.

### C.      The Current *Markman* Schedule Is the Result of Eton's Delay Tactics and Was Proposed by Eton

Discovery is not the only aspect of this case that Eton has repeatedly sought to delay; it has done the same in nearly all other aspects as well.  Most relevant to the current motion is Eton's delay relating to Exela's newly-issued patents, which forced two separate rounds of claim construction briefing and caused the *Markman* hearing date to be moved back a full eleven weeks, from June 1 to August 19.  Most notably, it was ***Eton*** who proposed, pushed for, and ultimately succeeding in getting the current schedule—which has the claim construction hearing after opening expert reports—that Eton now claims is problematic.

In an effort to add its new patents into the case as efficiently as possible, Exela began communicating with Eton immediately after receiving the first notice of allowance.  (Ex. S.) Exela tried to get agreement on a slightly modified schedule that would pose as little disruption as possible, including a proposal that moved the *Markman* date by less than a month, to late June.  (Ex. T.)  This proposal would have allowed for a *Markman* hearing in advance of expert

reports, but Eton would not agree and continued to oppose any efforts to integrate the new patents into the case.

On April 12, the same day the Court granted Exela's motion to amend the complaint to add the new patents, Exela again tried to move forward on claim construction for the new patents, sending Eton its single new term for construction and requesting a meet and confer on the claim construction schedule.  (Ex. U.)  Eton again sought delay, telling Exela that Eton "will require more time to evaluate the patents, once added to the case."  (Ex. V.)

Less than a week later, after Exela formally filed its Second Amended Complaint, it tried again to get Eton to engage on any new terms and on the claim construction schedule.  (Ex. W.) Eton *again* claimed to "need time to evaluate the newly added patents to determine which, if any, terms require construction," even though it had been aware of the patents for months and knew that Exela was only proposing one new term for construction.  (Ex. X.)

Having heard nothing else from Eton, on April 21, Exela proposed an efficient claim construction schedule with a June 28 *Markman* date (i.e., a hearing before expert reports).  Eton countered with a schedule proposing an August 16 *Markman* date, and notably with no changes to the expert report schedule.  In other words, Eton itself proposed having the *Markman* hearing *after* opening expert reports, which were (and still are) due August 13.  (Ex. Y.)

On April 27, at the parties' request, the Court entered a revised scheduling order with the current August 19 *Markman* date.  Eton expressed no concerns with the expert report deadlines then, or any time before its present request for an extended schedule.

## III.    ARGUMENT

### A.    Exela's Productions Provide No Reason to Extend the Schedule by Nearly Three Months

Eton's request to push the schedule by nearly *three months* because Exela produced documents *three weeks* after the substantial completion date is flatly unreasonable.  Eton can provide no justification for this requested delay.  Instead, it is evident that this request is just another attempt, like its earlier motion to stay and its opposition to the motion to amend, to delay this case long enough to clear a path for it to launch its generic product at-risk.

Eton's intent to delay is clear.  It has no interest in negotiating a reasonable extension here.  Exela proposed a specific schedule, set forth above in Section II.B, that provided a four-week extension of fact and expert discovery deadlines, which is longer than the production delay Eton complains of in its motion, but Eton would not negotiate.  (Ex. R.)  It refused to so much as provide any counter-proposal, and instead immediately filed this motion.

Its motion still provides no justification for the length of the requested three-month delay, nor any reason why it cannot prepare for a trial on the current March 2022 schedule.  Eton claims "prejudice" due to documents produced after the substantial completion deadline, but those documents were three weeks, not three months, after the deadline.  And now Eton has everything, ahead of the agreed-upon deposition dates for Exela's witnesses (which are scheduled for the week of July 19), and well ahead of expert reports being due.

Moreover, Eton has had Exela's key documents for months.  Exela produced its NDA in late 2020 and the vast majority of its custodial documents—including their emails—by June 2.  It responded to Eton's interrogatories seeking information about conception and reduction to practice, objective indicia of non-obviousness, research and development leading to the claimed

inventions, and the contributions of the various inventors by citing documents that had all been produced by April 26.

There is simply no justification for pushing the schedule back by three months and losing the current trial date, and Eton has provided none.  Exela is understandably concerned about keeping the trial date and ensuring that the case is decided before the expiration of the 30-month stay, especially in light of Eton's repeated statements about the possibility of launching its product at risk, including its recent statement to its shareholders that the 30-month stay "expires in August 2022 *which may allow the company to launch the product at-risk prior to the conclusion of litigation*."  (Ex. A at 5.)  Eton has provided no assurances with respect to not launching at risk.

That said, if Eton genuinely believes (as it tells the Court at page 1 of its brief) that its proposed schedule will "not prejudice either party," Eton can stipulate that it will not launch before a final entry of judgment in this case.  With that assurance, Exela would not object to Eton's proposed schedule.

Without that assurance, a delay in the trial may give Eton just what it wants and has repeatedly sought—enough delay to provide a chance to launch at-risk.  To avoid that devastating result, Exela would be forced to file for a preliminary injunction, causing a substantial amount of unnecessary and extra work for the parties and the Court that can be avoiding by keeping the current schedule or adopting Exela's compromise proposal.  Eton's latest attempt to delay should be rejected.

### B. There Is No Problem with the Current Exert Report Schedule, and Eton's Claim Otherwise Lacks Credibility

Eton's assertion that the amended scheduling order "creates a problem that was not apparent at the time" the schedule was amended is demonstrably *false*.  (Eton Br. at 4.)  This

supposed "problem," which is that the *Markman* hearing occurs after the opening round of expert reports, was created by **Eton's** proposed amendment to the *Markman* schedule—a proposal Eton pushed for and succeeded in getting, while fully aware of the expert report schedule.

Nor is it actually a problem.  With the *Markman* hearing occurring after the opening round of expert reports, the expert will need to address both parties' claim construction positions in their expert reports, but that is a common occurrence.  And the burden here is small because there are only two terms at issue and only *one* construction proposed for each—Exela's proposals.  For both terms, Eton's only position is indefiniteness, which leaves no competing construction for the experts to address.  The current *Markman* and expert report schedule provide no reason for any extension, let alone Eton's requested three-month extension.

## IV.   CONCLUSION

For all the reasons stated above, Exela respectfully requests that the Court reject Eton's latest delay tactic and deny Eton's Motion to Extend the Scheduling Order.  If the Court believes an extension is warranted, Exela submits that the four-week extension schedule it proposed to Eton, set forth in Section II.B, above, is more than sufficient.

Dated:  July 15, 2021

OF COUNSEL:

Corrin N. Drakulich
Christina D. Brown-Marshall
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005
drakulich@fr.com
brown-marshall@fr.com

Elizabeth M. Flanagan (#5891)
Deanna Reichel
FISH & RICHARDSON P.C.
60 South Sixth Street, #3200
Minneapolis, MN 55402
Tel: (612) 335-5070
betsy.flanagan@fr.com
reichel@fr.com

Jonathan E. Singer
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070
singer@fr.com

Satish Chintapalli
CHINTAPALLI LAW FIRM PLLC
150 Wrenn Drive, #1081
Cary, NC 27511
Tel: (919) 443-5504
satish@chintapallilaw.com

C. Edward Polk, Jr.
POLK LAW PLLC
Tel: (703) 989-5397
epolk@polklawpllc.com

**ATTORNEYS FOR PLAINTIFF**
**EXELA PHARMA SCIENCES, LLC**

_/s/ Gregory R. Booker_____
Gregory R. Booker (#4784)
Robert M. Oakes (#5217)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
Tel: (302) 652-5070
booker@fr.com
oakes@fr.com

**ATTORNEYS FOR PLAINTIFF**
**EXELA PHARMA SCIENCES, LLC**