**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EXELA PHARMA SCIENCES, LLC, | Civil Action No. 20-365-MN |
| Plaintiffs, | |
| v. | |
| ETON PHARMACEUTICALS, INC., | |
| Defendant. | |

## DEFENDANT ETON PHARMACEUTICALS, INC.'S REPLY TO ITS MOTION TO EXTEND THE SCHEDULING ORDER

Timothy Devlin (DE 4241)
Neil A. Benchell (*pro hac vice*)
1526 Gilpin Avenue
Wilmington, DE  19806
(302)-449-9010
tdevlin@devlinlawfirm.com
nbenchell@devlinlawfirm.com

*Attorneys for Plaintiff*
*Eton Pharmaceuticals, Inc.*

Dated:   July 18, 2021

**TABLE OF CONTENTS**

I.    Introduction...................................................................................................................... 1

II.   Argument ............................................................................................................................ 2

    A.    Exela's Claim That Eton Purposefully Delayed This Case Is Untrue and Irrelevant ...... 2

    B.    Eton's Attempts to Resolve the "Problem"..................................................................... 5

    C.    Eton Is Not Seeking a Delay to Trigger an At-Risk Launch............................................ 6

    D.    Exela Has a Pattern of Ignoring Agreed and Ordered Deadlines.................................... 7

    E.    The Expert Schedule Should Be Adjusted To Accommodate Claim Construction......... 8

III.  Conclusion .......................................................................................................................... 9

## I.    INTRODUCTION

The facts here are simple and straightforward.  After many accusations of delay by Exela, the parties agreed to extend the deadline for substantial completion of document production to June 1, 2021.  (D.I. 85.)  Exela then produced 28,489 pages on May 28, and Eton produced over 140,000 pages on June 1.  On the day after the deadline for substantial completion of document production Exela produced another 7,768 pages for a total of just over 117,000 pages produced on or about the deadline for substantial completion of document production.

Starting on June 21—three weeks past the deadline for substantial completion of document production—and with no notice to Eton, Exela began a series of document productions with the most recent on July 15, over six weeks after the deadline for substantial completion of document production.  These untimely document productions increased Exela's total document production from just over 117,000 pages to nearly 300,000 pages.  This represents a 250% increase in the number of pages Exela produced *after* it was to have completed its document production.  In other words, Exela produced two and a half times more documents after it was supposed to have completed its document production as compared to the number of documents that were timely produced.  Even after filing its Opposition to this Motion, where it told this Court that, "Exela has now completed it document production," Exela made yet another document production.  (*See* Plaintiff's Response in Opposition to Defendant's Motion to Extend the Scheduling Order (D.I. 124 ("Opp. Br.") at 8; July 15, 2021, 5:38 CDT, email from Julie Wheeler, Exhibit 1.)[1]

Exela produced the majority of its documents well after it was supposed to have completed its substantial document production, and continues to produce documents, over six weeks later.  With the end of fact discovery a mere two weeks away, there is no way for Eton to properly prepare for the upcoming depositions, or expert discovery which begins shortly thereafter.  To address the

---

[1] Citations to Exhibits in this brief refer to the Exhibits attached to the co-filed Declaration of Neil Benchell in Support of Defendant's Reply to the Motion to Extend the Scheduling Order.

extreme volume of untimely produced documents, Eton respectfully requests that all scheduled dates, including trial, be extended by three months.

## II.    ARGUMENT

### A.    Exela's Claim That Eton Purposefully Delayed This Case Is Untrue and Irrelevant

Exela appears to lay blame squarely on Eton for Exela's continuing production of documents beyond the deadline for substantial completion.  Acknowledging that its late productions are a "problem," Exela asserts that the "problem [] is largely of [Eton's] own making." (Opp. Br. at 2.)  But this cannot be true since Eton produced all of its documents by the agreed deadline, including its entire ANDA and all custodial and non-custodial documents.  By contrast, Exela continues to produce documents more than six weeks after that deadline has passed, even producing documents after it filed its Opposition Brief.

In fact, Exela has produced more than twice as many documents *after* the deadline for substantial completion of document production than it did before.  For example, starting just before the deadline Exela made the following productions (untimely productions in red):

| Date | No. of Pages | No. of Documents |
|---|---|---|
| May 28 | 28,489 | 4,208 |
| June 2 | 7,768 | 1,132 |
| June 21 (First) | 171 | 7 |
| June 21 (Second) | 151,409 | 4,742 |
| June 30 | 4 | 2 |
| July 1 | 8,870 | 3 |
| July 2 | 10,545 | 1,998 |
| July 12 | 4,424 | 526 |
| July 15 | 23 | 2 |

There is no way of knowing if there are yet more documents to come given Exela's production of documents after it filed its Opposition Brief, notwithstanding Exela's assurance that "Exela has now completed its document production."  (Opp. Br. at 8.)  Even if true, (and Eton has no

confidence in that), Exela's document production was supposed to be completed *over six weeks ago*, not when Exela filed its Opposition Brief.

As if trying to convince itself, Exela repeats its surprise over Eton's request for an extension, "for *a 3-week* delay in document production." (Opp. Br. at 2 (emphasis in original); *see also id*. at 10 ("Exela produced documents *three weeks* after the substantial completion date.") (emphasis in original); *id.* ("but those documents were three weeks, not three months, after the deadline."); *id.* at 7 ("the documents were produced less than a month after that date.")) While Exela readily admits that it produced its documents after the agreed deadline, it was not three weeks, but stretched over more than six weeks. However, whether it was three weeks or six is inconsequential. The fact remains that Exela, by its own admission, ignored a deadline that it had agreed to and in so doing, violated this Court's order. Exela cannot so easily brush off its flouting of the Court's ordered schedule, especially when Exela agreed to that same schedule.

Exela spends an excessive amount of time claiming that Eton created all of the delays in the schedule, calling it a "systematic effort[] to impede discovery and delay the case." (*See, e.g.*, Opp. Br. at 3-6.) Eton vigorously denies that any delays occurred and to the extent there were delays, both parties are to blame. In any event, Exela's recitation of Eton's alleged ills is meaningless. To address any prejudice to either party, on May 6, 2021, the parties stipulated to an extension of the deadline for substantial completion of document production. (D.I. 85.) The Court immediately entered the new deadline in a "So Ordered" docket entry that same day. Any prejudice either party incurred was mooted by the agreed extension of the deadline.[2]

---

[2] Exela also accuses Eton of delaying the schedule by challenging entry of the Second Amended Complaint, which Eton warned would create delays in the schedule (*see* Opp. Br. at 5), by filing its 12(b)(6) Motion to Dismiss (*see id.*), and proposing an appropriate claim construction schedule consistent with the then-current schedule (*see id*. at 8). By these arguments, it would appear that Exela would prefer to strip Eton of its rights under the Federal Rules. Eton refuses to engage in the absurdity of this proposition especially where Exela provides no support for its accusations.

Exela justifies the prejudice caused by its late production by saying, "And now Eton has everything, ahead of the agreed-upon deposition dates for Exela's witnesses (which are scheduled for the week of July 19),[3] and well ahead of expert reports being due." (Opp. Br. 10.) But that is exactly the point. The prejudice is not caused by Exela's failure to produce documents, but by the fact that Exela decided it did not need to abide by the agreed and ordered deadline, and continued producing documents until two weeks before the end of fact discovery, and less than a week before the scheduled depositions. Having produced the majority of its documents with so little time before depositions and with the end of discovery closely at hand, Exela has deprived Eton of the opportunity to properly review the documents, and if necessary seek additional depositions based on those documents.

Exela claims that it has "worked diligently to produce its documents and respond to Eton's discovery requests." (Opp. Br. at 6.) How can this be if the vast majority of its documents were not produced until *after* the deadline to do so, a deadline Exela had agreed to, and was ordered to meet by this Court. Certainly, if Exela had begun production of its ESI documents on April 16 as it claims, there can be no excuse for documents still being produced three months later, and perhaps beyond that. (*See id.* at 5.) Exela also states that its untimely production consisted of certified copies of the new patents and assignments and additional non-custodial ESI documents. (*See* Opp. Br. at 6.) Citing to only two of the seven late productions, Exela asserts that the certified copies of the patents were delayed because of "Covid-related issues." (*Id.* at 7.) But this production is only 170 pages out of the nearly 200,000 pages it produced after the deadline to do so. Exela also claims that the untimely documents "largely overlap with previously produced NDA documents." (*Id.*) If true, Exela is admitting it produced as many as 150,000 pages *it had already produced*.

_____

[3] Eton was forced to schedule depositions of Exela's witnesses when Exela refused to consider extending the schedule. Eton reserved its right to reschedule the depositions in the event the Court grants Eton's motion to extend the schedule.

Such duplicative document production is the definition of unreasonable and vexatious litigation practices.  In any event, Eton is not simply going to accept this representation, nor should the Court.

###### B.    Eton's Attempts to Resolve the "Problem"

Exela's accusation that Eton never made a counteroffer to Exela's proposed schedule extension, is a mischaracterization of the facts.  (*See* Opp. Br. at 10.)  As explained in the Opening Brief, it was Eton who made the first proposed schedule extension.   (*See* Defendant Eton Pharmaceuticals, Inc.'s Opening Brief in Support of its Motion to Extend the Scheduling Order (D.I. 113) ("Opn Br.") at 4, Exhibit 1.)  Exela's response *was* the counterproposal.  Exela first proposed that only Exela's depositions of Eton's fact witnesses should be extended beyond the end of fact discovery.[4]  (*See id*. at 4, Exhibit 2.)  After a meet and confer, and based on Exela's suggestion, Eton proposed all dates be moved by six weeks.  (*See id*.)  When Exela refused this second offer saying it "will not agree to a schedule that releases the current trial date," it was clear that the parties were at an impasse.  (*See id*. at 5.)

Exela's now suggests that a four-week extension is appropriate because it "is longer than the production delay Eton complains of in its motion."  (*See* Opp. Br. at 10.)  But that is simply not borne out by the facts.  Incredibly, Exela even admits that it made productions six weeks after the deadline for substantial completion of document production.  (*See* Opp. Br. at 8 (acknowledging Exela made document productions as late as July 13.)  And that does not consider

---

[4] Exela will get its wish to extend the deadline only for its depositions.  Exela issued a third-party subpoena for a deposition that will not take place until the first week of August.  In addition, Eton has proffered a second 30(b)(6) designee when Exela voiced concern about the initial designee. Although Eton does not believe a different designee is necessary, in an attempt to amicably resolve this issue, Eton offered the second designee.  Exela has agreed to take the new designee's deposition after the end of fact discovery.

the July 15 document production made *after* Exela filed its Opposition Brief.  Thus, a four-week extension comes far short of "the production delay Eton complains of in its motion."

      **C.**      **Eton Is Not Seeking a Delay to Trigger an At-Risk Launch**

Exela blames Eton's alleged scheme to delay this litigation on its intent to launch its product at risk.  This is sheer fantasy concocted as a diversion from the fact that Exela breached the Court's order by repeatedly producing substantial amounts of documents well after the deadline, and only weeks before the end of discovery.  Exela claims that Eton has made "repeated statements about the possibility of launching its product at risk."  (Opp. Br. at 11.)  A close read of Exela's Opposition Brief proves Exela's claims to be false.  The "repeated statements" boil down to a single sentence in a much larger SEC filing.  There, Eton simply states the fact that, "The application's 30-month stay expires in August 2022, which may allow the company to launch the product at-risk prior to the conclusion of litigation."

Making matters worse, Exela *knows* that Eton has not decided if it will launch its product at risk.  Beginning on the day before the Opposition Brief was filed, and continue to the filing date of its Opposition Brief, Exela deposed Eton's CEO, Sean Brynjelsen.  During Mr. Brynjelsen's deposition, Exela repeatedly asked about Eton's intention to launch its product at risk.   Mr. Brynjelsen was consistent in his response: "I don't know if we would or would not [launch at risk] because we have not discussed that at this point."  (July 14, 2021, Rough Transcript of Deposition of Sean Brynjelsen, Exhibit 2, at 31:2-21; *see also id.* at 210:2-6; July 15, 2021, Rough Transcript of Deposition of Sean Brynjelsen "Volume 2", Exhibit 3 at 16:16-19:14 ("A. I answered this question yesterday.  No plans or thoughts have been made on -- one way or the other if we would or would not.  That would be something we would think about in the future."))

It is surprising to see Exela make the claim that Eton will launch at risk with such conviction given that Exela's attorney acknowledged the day before filing its Opposition Brief that

Eton had not decided to launch at risk, "Q. And we discussed earlier that Eton currently has no plans one way or the other to launch the product at risk at this time?" (Exhibit 2 at 210:2-4.) When asked about the SEC filing Exela relies on as its smoking gun evidence of Eton's intent to launch at risk, Mr. Brynjelsen properly testified that "[t]his is just a statement of fact." (Exhibit 2 at 209:16-210:6.)

Having spent two days deposing Eton's CEO, and asking numerous questions about launching at risk, it is disappointing that Exela would completely mischaracterize Eton's position on launching at risk. Mr. Brynjelsen was clear that no decision had been made. Yet, Exela chose to ignore that sworn testimony and claim that Eton was purposely delaying this litigation so that it could launch at risk. That is clearly false, and Exela should not be allowed to make such blatantly misleading assertions.

### D.    Exela Has a Pattern of Ignoring Agreed and Ordered Deadlines

There can be no point to the Court ordering a particular schedule if the parties so easily contravene the order as if it never existed. Yet, this is exactly what Exela has done more than once in this case.

Upon amending the complaint to add three new patents, the parties agreed to and proposed an amended claim construction schedule. (D.I. 75.) The Court ordered this new claim construction schedule shortly thereafter. (D.I. 77.) This new claim construction schedule had a period of expert discovery that expired on June 16, 2021. (*See id*.) Yet on June 30, just as it did with document production, Exela ignored the order and served an untimely expert report with its Reply Claim Construction Brief, again with no prior notice to Eton.

With no time to depose Exela's expert, and no accommodations in the schedule for this untimely expert declaration, not to mention the inevitable rebuttal expert declaration from Eton's own expert, Eton asked Exela to withdraw its expert report. Exela refused, but offered a new

extended schedule that would even further compress the schedule—the same schedule Exela now argues cannot be extended.  In fact, Exela even contemplated the possibility that its new proposed schedule would jeopardize the current claim construction hearing date and suggested that any stipulation on moving the claim construction schedule, "include language in the joint stipulation noting that the parties defer to the Court as to whether the amended schedule leaves the Court ample time before the August 19 hearing or whether the Court instead wishes to move the hearing date."  (July 6, 2021, email from Christina Brown-Marshall to Stephanie Berger, attached as Exhibit 4.)

The fact that Exela was more than willing to move the claim construction hearing date in view of its violation of the deadline for expert discovery, but refuses to consider moving dates, including trial, when it ignored its obligation to substantially produce its documents by an agreed date, is astonishing.  The fact that Exela is suggesting contradictory positions to rectify its breach of the scheduling order should not be tolerated.  Indeed, it questions Exela's commitment to the rule of law, respect for this Court and this entire judicial process.

## E.  The Expert Schedule Should Be Adjusted To Accommodate Claim Construction

In addition to addressing the prejudice caused by Exela's violation of the Court's scheduling order, the amended claim construction schedule (D.I. 77) creates an issue not contemplated by the parties.  With the rescheduling of the claim construction hearing, opening expert reports will be served without the benefit of a claim construction ruling.  In fact, opening reports are due before the current claim construction hearing.  While not detrimental to the litigation process, having experts opine without knowing what the Court will decide is the proper construction of the claim terms, would result in experts having to reconsider their opinions in the middle of expert discovery.  Worse yet, the expert declarations may be rendered moot if the claim construction ruling is issued after the experts provide their opinions.  Eton believes that extending

the opening expert reports until after the *Markman* hearing, if not the claim construction ruling, will provide the experts direction on how the Court may rule on claim construction, thus ensuring more accurate expert opinions.

## III.     CONCLUSION

For the foregoing reasons, and those set forth in Eton's Opening Brief in Support of its Motion to Extend the Scheduling Order, Eton Pharmaceuticals, Inc. respectfully requests that the Court enter an order extending the remaining schedule.

Dated:  July 18, 2021                               DEVLIN LAW FIRM LLC

                                                    */s/ Timothy Devlin*
                                                    Timothy Devlin (DE 4241)
                                                    1526 Gilpin Avenue
                                                    Wilmington, DE  19806
                                                    (302)-449-9010
                                                    tdevlin@devlinlawfirm.com

                                                    Neil A. Benchell (admitted *pro hac vice*)
                                                    nbenchell@devlinlawfirm.com

                                                    *Counsel for Defendant*
                                                    *Eton Pharmaceuticals, Inc.*